BLUE CAPITAL LAW FIRM, P.C.
Matthew A. Berliner (SBN 224384)
Salvatore Picariello (SBN: 190442)
Bryan L. Ngo (SBN: 190184)
600 Anton Blvd, Suite 1000
Costa Mesa, CA 92626
(T) 714-418-5840
(F) 714-795-2995
mberliner@bluecapitallaw.com
Bngo@bluecapitallaw.com;

Attorneys for Plaintiff Blue Stone Strategy Group, LLC

UNTIED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE STONE STRATEGY GROUP, LLC<br>a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>NIKISHNA POLEQUAPTEWA, an individual, and DOES 1-5<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>(1) **COMPUTER FRAUD AND ABUSE ACT;**<br>(2) **MISSAPPROPRIATION OF TRADE SECRETS;**<br>(3) **BREACH OF CONTRACT; and**<br>(4) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this Complaint under 18 U.S.C. § 1331 because the claims in this Complaint arise from the laws of the United States.

2. This Court has subject matter jurisdiction over this Complaint under 28 U.S.C § 1367 because the claims in this Complaint are so related to the federal claims in the Complaint that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has personal jurisdiction over Defendant NIKISHNA POLEQUAPTEWA ("Polequaptewa") because Polequaptewa is an individual residing in Orange County, California and is located in this Court's jurisdiction.

4. Venue is proper because a majority of the events, omissions and damages giving rise to the Plaintiff's claims occurred in this district and this district has jurisdiction over Plaintiff's claims.

## PARTIES

5. BLUE STONE STRATEGY GROUP, LLC ("Blue Stone") is a Delaware limited liability company with its principal place of business in Irvine, California.

6. Polequaptewa is an individual residing in Garden Grove, California.

7. Blue Stone is ignorant of the true names and capacities of Defendants sued herein as DOES 1-5, inclusive, and therefore sues these Defendants by such fictitious names. Blue Stone will seek leave to amend this Complaint to allege the true names and capacities of such fictitious Defendants when they are ascertained. Blue Stone alleges that each of the Defendants sued herein as DOES 1-5, inclusive, is in some manner responsible in whole or in part for the injuries which have been, are being, and will be suffered by Blue Stone as alleged herein resulting in or contributing to the other Defendants' actions which are injurious to Blue Stone.

COMPLAINT

8. Blue Stone is a consulting business that primarily provides services to Native American tribes/nations throughout the United States. Blue Stone provides assistance and consulting to Native American tribes/nations in the areas of organizational management, community development, leadership planning workshops and training, finance, master strategic planning, real estate, and tribal and corporate governance.

9. Blue Stone has been in business for 7-8 years and has been very successful in its consulting business.

10. As part of its consulting business, Blue Stone has developed a variety of strategic, proprietary and trade secret information including, but not limited to, customer and client data, including specific financial information of individual clients.

11. As part of his employment with Blue Stone, Polequaptewa had access to this proprietary confidential, and trade secret information. Blue Stone is informed and believes and thereon alleges that Polequaptewa transferred and/or saved its proprietary and trade secret information onto his own personal computing devices (i.e., laptops, iPads, and USB drives) without the permission or consent of Blue Stone.

12. In or about April, 2014, Blue Stone retained Polequaptewa as a senior strategist in Irvine, California. Pursuant to the Employment Agreement between Polequaptewa and Blue Stone, Polequaptewa was to be a senior strategist in specifically located target locations and tribal governments. Polequaptewa's job duties were to include, but were not limited to: business development, marketing, and project development and management.

13. As part of his employment, Polequaptewa signed an "Employment Agreement" with Blue Stone on or about April 16, 2014. The terms of the Employment Agreement included the following terms:

> "6. **Confidentiality:** [Polequaptewa] recognized that Blue Stone has and will have information regarding the following:

a. Inventions, products, product design, processes, technical matters, trade secrets – copyrights, customer lists, costs discounts, business affairs, future plans.

b. Other information items (collectively, "Information") which are valuable, special and unique assets of Blue Stone

c. [Polequaptewa] agrees that he will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any Information to any third party without the prior written consent of Blue Stone management, and

d. [Polequaptewa] will protect the Information and treat it as strictly confidential. A violation by [Polequaptewa] of this paragraph shall be a material violation of this Employment Agreement and will justify legal and/or equitable relief."

14. The Employment Agreement also provided the following:

"7. **Unauthorized Disclosure of Information:** If it appears that [Polequaptewa] has disclosed (or has threatened to disclose) Information in violation of this Employment Agreement, Blue Stone shall be entitled to an injunction to restrain [Polequaptewa] from disclosing, in whole or in part, such Information, or from providing any services to any party to whom such Information has been disclosed or may be disclosed. Blue Stone shall be not be prohibited by this provision from pursuing other remedies, including a claim for losses and damages."

15. The Employment Agreement also provided the following:

"16. **Return of Property:** Upon termination of this Employment Agreement, [Polequaptewa] shall deliver to Blue Stone all property that is Blue Stone's property or related to Blue Stone's business

4

COMPLAINT

(including keys, records, notes, data, memoranda, models, and equipment) that is in [Polequaptewa's] possession or under [Polequaptewa's] control . . .."

16. In addition to the Employment Agreement, [Polequaptewa] also executed a "Mutual Nondisclosure Agreement" with Blue Stone. The pertinent terms of the Mutual Nondisclosure Agreement are:

"3. **Non-use and Non-disclosure.** Each party agrees not to use any Confidential Information of the other party except to evaluate and engage in discussions concerning the Opportunity. Each party agrees not to disclose any Confidential Information of the other party, except that, subject to Section 4 below, a receiving party may disclose the other party's Confidential Information to those employees of the receiving party who are required to have the information in order to evaluate or engage in discussions regarding the Opportunity . . .."

4. **Maintenance of Confidentiality.** Each party agrees that it shall take reasonable measures to protect the secrecy and avoid disclosure and unauthorized use of the Confidential Information of the other party. Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own confidential information or similar nature, but in no case less than reasonable care (including, without limitation, all precautions the receiving party employs with respect to its confidential materials) . . . No party shall make any copies of the other party's Confidential Information except upon the other party's prior written approval . . .."

7. **Return of Material.** All documents and other tangible objects containing or representing Confidential Information that has been disclosed by either party to the other party, and all copies extracts

thereof that are in the possession of the other party, shall be and remain the property of the disclosing party and shall be promptly returned to the disclosing party upon the disclosing party's written request."

17. In the course of Polequaptewa's employment with Blue Stone, Polequaptewa also become knowledgeable regarding the IT infrastructure of Blue Stone – including its databases, passwords, servers, email accounts and other electronic information. During the course of his employment, Polequaptewa was asked to assist in the IT maintenance of this infrastructure.

18. On or about November 2014, the CEO of Blue Stone, and others, met with Polequaptewa to discuss IT changes at the Blue Stone, offices. During that time, Blue Stone decided to move its IT, web-design and marketing to third party external companies. During the meeting with Polequaptewa, Blue Stone executives asked that Polequaptewa "turn over" all of the data needed to hand the IT, web-design and marketing over to the third party external companies. During this meeting, Polequaptewa was less than helpful and obstructed Blue Stone's attempts to transfer management of its IT infrastructure to the third party external companies. This is just the first example of Polequaptewa failing to abide by his duties under his Employment Agreement.

19. On or about November 15th-16th, 2014, Polequaptewa and other employees and executives of Blue Stone traveled to Ft. Lauderdale Florida for a conference. During the conference and in front of Blue Stone clients, Polequaptewa abruptly announced his resignation. This was a shock to the other Blue Stone employees and officers in attendance.

20. Shortly after Polequaptewa announced his resignation, Blue Stone employees began to notice that data, emails, and computer files were being deleted/transferred from Blue Stone's databases, servers and email accounts. Via a forensic review, Blue Stone's IT professionals were able to ascertain that the intrusions

were generated from IP addresses located in Ft. Lauderdale Florida. Additionally some of the intrusions were generated from accounts and passwords associated with Polequaptewa.

21. Sensing something amiss, Blue Stone executives contacted local law enforcement in Ft. Lauderdale Florida, and suggested that Polequaptewa may behind the IT intrusions and damage being caused to Blue Stone's IT infrastructure. Florida law enforcement went to Polequaptewa hotel room in Ft. Lauderdale Florida to ascertain whether Polequaptewa was the cause of the disruption and damage. During the course of their discussions with Polequaptewa, he admitted that he was accessing Blue Stone's IT infrasturure. Additionally at that time, Polequaptewa also admitted to Blue Stone employees and police officers that he was accessing Blue Stone's IT infrastructure.

22. In total, Blue Stone determined that the data on its servers, Google Drive, Webhosting, CRM, Chimpmail, and cox had been deleted and passwords had been changed. Blue Stone's independent IP professionals spent over 10 hours to get as much of the data restored as could be accomplished. The estimated cost of such repairs and restoration exceed $50,000.

23. Blue Stone is informed and believes and thereon alleges that Polequaptewa accessed Blue Stone's IT infrastructure, without authorization, and deleted and transferred its files, misappropriated its proprietary and trade secret information, and caused more that $50,000 in damage to its IT infrastructure.

24. Subsequently, on or about November 19, 2014 Polequaptewa came to Blue Stone's offices to gather his personal belongings. During the course of that time, Polequaptewa admitted to Blue Stone personnel that he accessed, transferred and/or deleted information from the Blue Stone IT infrastructure.

## First Cause of Action

## Violation of the Computer Fraud and Abuse Act

### (Against Polequaptewa)

25. Blue Stone realleges and incorporates as though fully herein the allegations found in paragraphs 1-24 above.

26. Blue Stone's computers, servers and IT databases are protected because Blue Stone's computers, servers and IT databases are used in interstate commerce and communication.

27. Polequaptewa intentionally accessed Blue Stone's computers, servers and IT databases without authorization and/or exceeded his authorization to obtain files, information and trade secrets involving interstate communications, including emails, customer information, financial information, and other protected data to customers in different states and tribal nations.

28. Polequaptewa knowingly accessed Blue Stone's computers, servers, databases and IT infrastructure with the intent to defraud and obtain confidential and proprietary information for his own gain and/or to harm Blue Stone.

29. Polequaptewa's unauthorized access to Blue Stone's computers, servers and IT databases, caused damage to Blue Stone in an amount greater that $5,000 to be determined at trial.

30. Blue Stone now seeks general and compensatory damages injunctive relief and other equitable relief that the Court deems proper.

## Second Cause of Action

## Violation of the California Uniform Trade Secret Act

### (Against Polequaptewa)

31. Blue Stone realleges and incorporates as though fully herein the allegations found in paragraphs 1-30 above.

COMPLAINT

32. Blue Stone is the owner of confidential and proprietary information, trade secrets, customer lists, customer financial data, and other pertinent information. This information is not generally known to the public and has economic value.

33. Blue Stone has used reasonable efforts under the circumstances to maintain the secrecy of its confidential and proprietary information, trade secrets, customer lists, customer financial data, and other pertinent information, including having its employees and third party vendors sign confidentiality agreements.

34. Polequaptewa was an employee of Blue Stone, wherein Polequaptewa signed an Employment Agreement and Mutual Nondisclosure Agreement where Polequaptewa agreed to keep Blue Stone's confidential and proprietary information, trade secrets, customer lists, customer financial data, and other pertinent information secret. Polequaptewa also agreed that he would only use such information for purposes of his employment with Blue Stone.

35. Polequaptewa misappropriated Blue Stone's confidential and proprietary information, trade secrets, customer lists, customer financial data, and other pertinent information by improper acquisition, unconsented use and improper disclosure, without Blue Stone's consent. Polequaptewa misappropriated Blue Stone's trade secrets, customer lists, customer financial data, and other pertinent information with knowledge that such information constitutes trade secrets and confidential information.

36. Polequaptewa improperly took and deleted information from Blue Stone's computers, servers, databases and email accounts without consent and with the knowledge that such actions were wrongful.

37. Polequaptewa's continued retention, disclosure and use of Blue Stone's trade secrets, customer lists, customer financial data, and other pertinent information, as alleged herein, constitutes actual and threatened misappropriation of trade secrets pursuant to the California Uniform Trade Secret Act.

38. Polequaptewa's actions were and are a substantial factor in causing harm to Blue Stone in the form of actual damages, lost revenue, lost business, and reparative efforts.

39. As a result of Polequaptewa's actions, Blue Stone has been harmed in an amount to be proven at trial.

40. Polequaptewa has willfully and maliciously misappropriated Blue Stone's trade secrets, customer lists, customer financial data, and other pertinent information. Thus Blue Stone requests that the Court award Blue Stone exemplary damages in an amount to be proven at trial.

### Third Cause of Action

### Breach of Contract

### (Against Polequaptewa)

41. Blue Stone realleges and incorporates as though fully herein the allegations found in paragraphs 1-40 above.

42. Polequaptewa entered into an Employment Agreement and Mutual Nondisclosure Agreement(s) with Blue Stone.

43. Blue Stone has performed any and all conditions, covenants and promises under the Employment Agreement and Mutual Nondisclosure Agreement(s) with Polequaptewa.

44. As set for the above, Polequaptewa violated and breached the Employment Agreement and Mutual Nondisclosure Agreement(s) by, among other things, misappropriating trade secrets, confidential information, customer information, customer lists, emails, and company data. Polequaptewa has also intentionally accessed Blue Stone's computers, servers, databases and IT infrastructure with the intention of causing damage thereto.

45. As a direct and proximate result of Polequaptewa's breaches, Blue Stone has suffered and continues to suffer damages in an amount to be proven at trial.

46. Pursuant to the Agreements, Blue Stone is entitled to its attorney's fees.

## Fourth Cause of Action

## Breach of the Implied Covenant of Good Faith and Fair Dealing

### (Against Polequaptewa)

47. Blue Stone realleges and incorporates as though fully herein the allegations found in paragraphs 1-46 above.

48. Polequaptewa entered into Employment Agreement and Mutual Nondisclosure Agreement(s) with Blue Stone.

49. A covenant of good faith and fair dealing is implied by law in all contracts. The covenant requires that neither party to a contract do anything to deprive the other of the benefit of the contract.

50. At the time that Blue Stone and Polequaptewa entered into the Employment Agreement and Mutual Nondisclosure Agreement(s), Polequaptewa implicitly agreed to act in good faith and deal fairly with Blue Stone.

51. Blue Stone has performed any and all conditions, covenants and promises under the Employment Agreement and Mutual Nondisclosure Agreement(s) with Polequaptewa

52. Polequaptewa breached his implied covenant to act in good faith and in fact he acted in bad faith when he misappropriated trade secrets, confidential information, customer information, customer lists, emails, and company data. Polequaptewa also breached the implied covenant when he intentionally accessed Blue Stone's computers, servers, databases and IT infrastructure with the intention of causing damage thereto.

53. As a direct and proximate result of Polequaptewa's breaches, Blue Stone has suffered and continues to suffer damages in an amount to be proven at trial.

54. Pursuant to the Agreements, Blue Stone is entitled to its attorney's fees.

## PRAYER FOR RELIEF

WHEREFOR Blue Stone prays for judgment as follows:

As to the First Cause of Action:

a. For general and compensatory damages;

b. For a preliminary and permanent injunction; and

c. For whatever relief the Court deems proper.

As to the Second Cause of Action:

a. For general and compensatory damages;

b. For a preliminary and permanent injunction;

c. For exemplary damages; and

d. For whatever relief the Court deems proper.

As to the Third Cause of Action:

a. For general and compensatory damages;

b. For attorney's fees; and

c. For whatever relief the Court deems proper.

As to the Fourth Cause of Action:

a. For general and compensatory damages;

b. For attorney's fees; and

c. For whatever relief the Court deems proper.

DATED: November 26, 2014

BLUE CAPITAL LAW FIRM P.C.
MATTHEW A. BERLINER
SALVATORE PICARIELLO

By: _____
Salvatore Picariello

Attorneys for Plaintiff Blue Stone Strategy Group

## DEMAND FOR JURY TRIAL

Plaintiff Blue Stone Strategy Group, LLC hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: November 26, 2014

BLUE CAPITAL LAW FIRM P.C.
MATTHEW A. BERLINER
SALVATORE PICARIELLO

By: _____
Salvatore Picariello

Attorneys for Plaintiff Blue Stone Strategy Group

COMPLAINT