MICHAEL J. KHOURI, ESQ. [SBN 97654]
Email: mkhouri@khourilaw.com
ANDREW B. GOODMAN, ESQ. [SBN 267972]
Email: agoodman@khourilaw.com
KHOURI LAW FIRM
4040 Barranca Parkway, Suite 280
Irvine, California 92604
Telephone: (949) 336-2433
Fax: (949) 387-0044

Attorneys for defendant/counterclaimant
NIKISHNA POLEQUAPTEWA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| BLUE STONE STRATEGY GROUP, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>NIKISHNA POLEQUAPTEWA, an individual,<br><br>Defendant. | Case No. SACV14-1888 CJC (DFMx)<br><br>**DEFENDANT NIKISHNA POLEQUAPTEWA'S COUNTERCLAIMS AGAINST BLUE STONE STRATEGY GROUP, LLC**<br><br>**DEMAND FOR JURY TRIAL**<br><br>[Assigned to Hon. Cormac J. Carney]<br><br>Complaint filed: November 26, 2014<br>Response date: March 12, 2015 |
| NIKISHNA POLEQUAPTEWA, an individual,<br><br>Counterclaimant,<br><br>vs.<br><br>BLUE STONE STRATEGY GROUP, LLC, a Delaware limited liability company,<br><br>Counter-defendant. | |

Counterclaimant NIKISHNA POLEQUAPTEWA ("Polequaptewa") asserts the following counterclaims against counter-defendant BLUE STONE STRATEGY GROUP, LLC ("Blue Stone"):

## I. INTRODUCTION

1. Polequaptewa's counterclaims against Blue Stone for breach of contract, breach of the covenant of good faith and fair dealing, invasion of privacy, and conversion arise out of his employment relationship with Blue Stone, upon which the complaint in this action is based. Polequaptewa's employment relationship with Blue Stone began in April 2014 and deteriorated in November 2014 when, among other things, Blue Stone and its agents: pressured Polequaptewa into abruptly relocating his family to Florida, hacked into his personal email and Apple ID accounts (upon information and belief), and inexplicably exercised dominion and control over his personal property, which, as of the date of this counterclaim, has not been returned.

## II. THE PARTIES

2. Polequaptewa is an individual residing in Garden Grove, California.

3. Blue Stone is a Delaware limited liability company with a principal place of business in Irvine, California.

## III. JURISDICTION AND VENUE

4. This Court has personal jurisdiction over counter-defendant Blue Stone because Blue Stone has a principal place of business within Orange County, California, which is located within this Court's jurisdiction. Moreover, Blue Stone has consented to this Court's jurisdiction by commencing its action against Polequaptewa in this Court.

5. Venue is proper because a majority of the events, omissions, and damages giving rise to Polequaptewa's counterclaims occurred in this district. In any event, Blue Stone chose this Court in its action against Polequaptewa, and thus cannot object to Polequaptewa's counterclaims on venue grounds.

6. This Court has subject matter jurisdiction over Polequaptewa's counterclaims because they fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). Polequaptewa's counterclaims are compulsory because, among other reasons, they bear a logical relationship to Blue Stone's claims against Polequaptewa; both arise out of the employment relationship.

## IV. BACKGROUND ALLEGATIONS

### A. April 2014: The Employment Agreement

7. In April 2014, Polequaptewa and Blue Stone entered into a written employment agreement (the "Employment Agreement"), where Blue Stone hired Polequaptewa as a full-time employee, specifically a "senior strategist."

8. Although the Employment Agreement said that Blue Stone would provide Polequaptewa with a laptop computer, Blue Stone never did; Polequaptewa used his personal laptop computer throughout his tenure with Blue Stone.

9. The Employment Agreement (paragraph 19) provides that: "This Employment Agreement may be modified or amended, if the amendment is made in writing and is signed by both parties."

10. The Employment Agreement does not, expressly or impliedly, require Polequaptewa to relocate or engage in extended travel to complete his job duties as a senior strategist.

### B. October to November 2014: The disintegration of Polequaptewa's employment relationship with Blue Stone as a result of Blue Stone's subversive and retaliatory conduct

11. Polequaptewa's employment relationship with Blue Stone began to deteriorate in October and November 2014.

12. In October 2014, Blue Stone began to develop a project in Florida (the "Florida project"). Polequaptewa's supervisor, Bill Moon ("Moon"), listed Polequaptewa as a lead strategist on the Florida project.

13. Polequaptewa told Moon that he could not work on the Florida project for several significant reasons. For one, the Florida project required travel to Florida for six days a week for six months. Polequaptewa believed that he would effectively have to move his wife, who works full time in Irvine, and three young children to Florida so that he could work on the Florida project. Polequaptewa attempted to accommodate Blue Stone by offering to work three to four days in Florida, but Moon told Polequaptewa that "this is the consulting world; we work all the time."

14. Polequaptewa nonetheless believed he would be off the Florida project after voicing his objections.

15. In November 2014, Polequaptewa submitted two internal whistleblower complaints in writing to Blue Stone corporate officers. The complaints related to IT security concerns and financial malfeasance by Blue Stone corporate officers. Specifically, Polequaptewa complained about how Blue Stone corporate officers improperly paid tribal leaders—Ernest Stevens, Jr. (Chairman of the National Indian Gaming Association), Brian Patterson (President of the United South & Eastern Tribes), Tim Keller (New Mexico State Senator), Brian Cladoosby (President of the National Congress of American Indians), and Henry Cagey (Elected Tribal Counsel Member, Lummi Nation), among others—to convince their constituents to get contracts for Blue Stone.

16. In November 2014, after submitting his internal complaints, Polequaptewa was demoted from a senior strategist to a strategist.

17. On or around November 10, 2014, Polequaptewa saw his name on a travel logistics email for the Florida project.

18. Polequaptewa spoke with Moon once again after seeing the travel logistics email. Moon told Polequaptewa that he had to go for the first week just to get the project launched. Polequaptewa agreed to go for a week, but believed that he would be returning home to Orange County after helping to launch the Florida

project.

19. Polequaptewa arrived in Florida on or around November 18, 2014. When Polequaptewa arrived in Florida, he received an orientation-meeting outline. The outline listed Polequaptewa as one of the two Blue Stone employees who would be required to be in Florida from Sunday to Friday each week for six months.

20. Polequaptewa felt that Blue Stone deceived him, ignored his concerns, and retaliated against him. Polequaptewa attempted to discuss his concerns about the Florida project with Blue Stone's office manager, Moon, and Blue Stone CEO, John Mooers ("Mooers").

21. Everyone at Blue Stone that Polequaptewa attempted to contact ignored him and avoided his request for resolution. Polequaptewa felt trapped into spending six days a week in Florida for six months. Consequently, Polequaptewa felt that he had no choice but to resign from Blue Stone.

**C. Evening of November 18, 2014: Moon falsely tells the police that Polequaptewa might kill himself in order to gain access to Polequaptewa's hotel room**

22. On the evening of November 18, 2014, after Polequaptewa resigned from Blue Stone, upon information and belief, Moon called the police and told them that Polequaptewa might kill himself.

23. The police arrived at Polequaptewa's hotel room in response to Moon's call. Polequaptewa's wife and young children were in the hotel room.

24. Moon attempted to get the police officer to seize Polequaptewa's personal laptop, and alleged that it belonged to Blue Stone. Polequaptewa asserted that the laptop belonged to him.

25. The police officer advised Polequaptewa to turn over the laptop to show that he had nothing to hide, but to take pictures of it and lock the device. Polequaptewa cooperated because he felt he had no other choice, and was not

detained in any form.

**D. Polequaptewa's personal email accounts and Apple ID account are hacked into shortly after Polequaptewa provides Blue Stone access to his linked Blue Stone email account**

26. On or around November 14, 2014, Moon and Mooers requested that Polequaptewa transfer all company network and IT-related administrative passwords and privileges over to Mooers' longtime friend, Eldad Yacobi. Polequaptewa complied with the request, and did not give his passwords and privileges to anyone else.

27. The following Tuesday, November 18, 2014, Polequaptewa was locked out of his Blue Stone email account, which was the recovery account for two of his personal email accounts. Polequaptewa has not given his passwords to his two personal email accounts to anyone else, but they can be accessed via his Blue Stone email account.

28. Within an hour, Polequaptewa discovered that his personal email accounts were hacked through his Blue Stone email account. His two personal email accounts were then used to hack his Apple ID account, which Polequaptewa was locked out of as well. Polequaptewa has not given his password to his Apple ID account to anyone else, but it can be accessed via his personal email accounts.

29. Once Polequaptewa regained access to his personal email accounts and Apple ID account, he began receiving consistent phone text and voice message attempts to hack back into his accounts. The cyber attacks attempting to gain access to Polequaptewa's email accounts even extended to his bank account.

30. Polequaptewa traced the IP address of the intruder to Southern California, and was in Florida at the time of the cyber attacks. Upon information and belief, Blue Stone caused and/or contributed to the cyber attacks.

///

**E. November 19, 2014 to the present: Blue Stone does not allow Polequaptewa to retrieve his personal property**

31. On or around November 19, 2014, Polequaptewa went to Blue Stone's Irvine office to obtain his personal property, but was asked to leave and was refused access to it.

32. On or around November 21, 2014, Polequaptewa made a written request for his personal property to Mooers, among others. Polequaptewa also included his proof of purchase of his personal laptop with the serial number identification.

33. On or around November 24, 2014, Polequaptewa received an email from Matthew Berliner, an attorney, on behalf of Blue Stone. Mr. Berliner advised that Blue Stone would pack up Polequaptewa's personal property and ship it to his home address in Garden Grove, but that they would be turning over Polequaptewa's laptop to the authorities. Polequaptewa was surprised that Blue Stone (and not the Florida police) was in possession of his personal laptop.

34. Polequaptewa did not receive all of his personal property. Polequaptewa made another request for his remaining personal property on or around February 2, 2015 once he retained counsel, but, as of the date of this counterclaim, has not received his remaining personal property. It is still in Blue Stone's possession, custody, and control.

35. Polequaptewa's personal property that wrongfully remains in Blue Stone's possession, custody, and control includes:

- 1 Mac Mini ($649.00);
- 1 Smartstor external RAID drive ($699.00);
- 1 custom Macbook Pro Retina laptop ($3018.00)
- 1 iPro lens ($189.00);
- 2 64 GB SDXC cards ($299.90);
- 1 Firewire adapter ($29.00);

- 1 Firewire 800/400 cable ($19.95);
- 1 Apple HDMI to HDMI cable ($19.00);
- 1 Thunderbolt to Firewire adapter ($29.00);
- 1 Blue Mikey portable digital microphone ($99.99);
- 1 200+ HD video elements ($80.95);
- 1 Animated shoulder sets ($99.99);
- 1 Apple motion collection volume 01 ($249.95);
- 1 CS5 design premium MAC ($349.00);
- 1 CS5.5 design premium ($353.00);
- 1 Microsoft Office MAC ($49.96);
- 1 Motion designer's toolkit volume 01 ($39.00);
- 1 OfficeReady 4.0 Platinum ($74.95);
- 1 Parallels desktop 5 ($39.99);
- 1 Parallels desktop 7 for Mac upgrade ($49.99);
- 1 Simplexity vol. 3 motion templates ($99.99);
- 1 Unlimited license for formidable pro data manager ($117.00);
- 1 Wirecast-Like Broadcase Chromakey software ($404.10);
- 1 Art display wall kit (curtain rod) ($25.00).

## FIRST COUNTERCLAIM

**(For breach of contract, against Blue Stone)**

36. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 35.

37. Polequaptewa and Blue Stone entered into a valid contract by executing the Employment Agreement in or around April 2014.

38. Polequaptewa performed all of the significant duties that the Employment Agreement required of him, or was excused from doing so.

39. Blue Stone pressured and deceived Polequaptewa into abruptly relocating to Florida six days a week for six months, but such a relocation was not

an express or implied term of the Employment Agreement. Blue Stone failed to amend the Employment Agreement in writing, pursuant to paragraph 19, in order to allow for the term of Polequaptewa's relocation to Florida.

40. Polequaptewa was damaged by Blue Stone's breach of the Employment Agreement in that, among other things, he had no choice but to resign his position at Blue Stone, and Blue Stone continues to improperly retain his personal property.

## SECOND COUNTERCLAIM

**(For breach of the covenant of good faith and fair dealing, against Blue Stone)**

41. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 40.

42. Polequaptewa and Blue Stone entered into a valid contract by executing the Employment Agreement in or around April 2014.

43. Polequaptewa performed all of the significant duties that the Employment Agreement required of him, or was excused from doing so.

44. Blue Stone unfairly interfered with Polequaptewa's right to receive the benefits of the Employment Agreement by pressuring and deceiving Polequaptewa into abruptly relocating to Florida six days a week for six months, when such a relocation was not an express or implied term of the Employment Agreement.

45. Polequaptewa was damaged by Blue Stone's breach of the covenant of good faith and fair dealing in that, among other things, he had no choice but to resign his position at Blue Stone, and Blue Stone continues to improperly retain his personal property.

## THIRD COUNTERCLAIM

**(For invasion of privacy, against Blue Stone)**

46. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 45.

47. Polequaptewa had a reasonable expectation of privacy in being undisturbed in his hotel room in Florida with his wife and children on the evening of November 18, 2014.

48. Blue Stone intentionally intruded in Polequaptewa's hotel room when Moon misrepresented to the police that Polequaptewa might try to kill himself.

49. Blue Stone's intrusion is highly offensive to a reasonable person because of the nature of the misrepresentation, and how it was done in front of Polequaptewa's wife and young children. Moreover, the motivation for the call was specious—Blue Stone knew that it never provided Polequaptewa with a laptop, and that Polequaptewa used his personal laptop. But Moon attempted to have the police seize Polequaptewa's personal laptop anyway.

50. As a result of Blue Stone's intrusion into Polequaptewa's private affairs, Polequaptewa's right to privacy was damaged.

51. Polequaptewa had a reasonable expectation of privacy in his personal email accounts and Apple ID account.

52. Blue Stone intentionally intruded in Polequaptewa's personal email accounts and Apple ID account by locking Polequaptewa out of his Blue Stone email account, and then, upon information and belief, hacking into his personal email accounts and Apple ID account.

53. Blue Stone's intrusion into Polequaptewa's personal email accounts and Apple ID account was highly offensive to a reasonable person because no one would want their sensitive information compromised. Further, the circumstances under which the intrusion occurred—on the same day that Polequaptewa resigned from Blue Stone, after Polequaptewa's relationship with Blue Stone deteriorated (e.g., by submitting internal complaints), and with the future event of Blue Stone wrongfully repossessing Polequaptewa's personal property—make the intrusion highly offensive to a reasonable person.

54. As a result of Blue Stone's additional intrusion into Polequaptewa's

private affairs, Polequaptewa's right to privacy was damaged.

**FOURTH COUNTERCLAIM**

**(For conversion, against Blue Stone)**

55. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 54.

56. Blue Stone continues to exercise wrongful dominion and control over Polequaptewa's personal property described in paragraph 35, *supra*. Blue Stone is not only exercising wrongful dominion and control over the personal property itself, but also the intellectual property contained in the computer equipment and external hard drives, including: data, templates, models, proposals, and approximately $150,000.00 worth of contracts.

57. As a proximate result of Blue Stone's wrongful exercise of dominion and control over Polequaptewa's property, Polequaptewa has been damaged well in excess of the jurisdictional limit (in an amount to be proven at trial).

///

## PRAYER FOR RELIEF

WHEREFORE, Polequaptewa prays for judgment as follows:

1. For general and special damages in an amount to be established at trial, and such penalties as are allowed by law;

2. For injunctive relief;

3. For return of the property described in paragraph 35, *supra*, and damages for its detention;

4. For Polequaptewa's costs of suit incurred in the defense of this action, including attorneys' fees with pre- and post-judgment interest; and

5. For such other relief as the Court deems proper.

Dated: March 12, 2015

Respectfully submitted,

KHOURI LAW FIRM

By: */s/ Michael J. Khouri*
MICHAEL J. KHOURI, ESQ.
ANDREW B. GOODMAN, ESQ.
Attorneys for defendant/counterclaimant
NIKISHNA POLEQUAPTEWA

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Polequaptewa demands a trial by jury in the above-entitled matter.

Dated: March 12, 2015

Respectfully submitted,

KHOURI LAW FIRM

By: */s/ Michael J. Khouri*
MICHAEL J. KHOURI, ESQ.
ANDREW B. GOODMAN, ESQ.
Attorneys for defendant/counterclaimant
NIKISHNA POLEQUAPTEWA