MICHAEL J. KHOURI, ESQ. [SBN 97654]
Email: mkhouri@khourilaw.com
ANDREW B. GOODMAN, ESQ. [SBN 267972]
Email: agoodman@khourilaw.com
KHOURI LAW FIRM
4040 Barranca Parkway, Suite 280
Irvine, California 92604
Telephone: (949) 336-2433
Fax: (949) 387-0044

Attorneys for defendant/counterclaimant
NIKISHNA POLEQUAPTEWA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

BLUE STONE STRATEGY GROUP, LLC, a Delaware limited liability company,

Plaintiff,

vs.

NIKISHNA POLEQUAPTEWA, an individual,

Defendant.

Case No. SACV14-1888 CJC (DFMx)

**DEFENDANT NIKISHNA POLEQUAPTEWA'S FIRST AMENDED COUNTERCLAIMS FOR:**

**(1) BREACH OF CONTRACT**
**(2) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(3) INVASION OF PRIVACY**
**(4) CONVERSION**
**(5) RETALIATION**
**(6) ASSAULT**
**(7) BATTERY**

**DEMAND FOR JURY TRIAL**

[Assigned to Hon. Cormac J. Carney]

Complaint filed: November 26, 2014
Counterclaim filed: March 12, 2015
Answer to counterclaim filed: April 2, 2015

NIKISHNA POLEQUAPTEWA, an individual,

Counterclaimant,

vs.

BLUE STONE STRATEGY GROUP, LLC, a Delaware limited liability company; ELDAD YACOBI, an individual; and JOHN MOOERS, an individual,

Counter-defendants.

Pursuant to FRCP 15(a)(1)(B), counterclaimant NIKISHNA POLEQUAPTEWA ("Polequaptewa") asserts the following counterclaims against counter-defendant BLUE STONE STRATEGY GROUP, LLC ("Blue Stone"), counter-defendant ELDAD YACOBI ("Yacobi"), and counter-defendant JOHN MOOERS ("Mooers"):

## I. INTRODUCTION

1. Polequaptewa's counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, invasion of privacy, conversion, retaliation, assault, and battery all arise out of his employment relationship with Blue Stone, upon which the complaint in this action is based. Polequaptewa's employment relationship with Blue Stone began in April 2014 and deteriorated in November 2014 when, among other things, Blue Stone and its agents: pressured Polequaptewa into abruptly relocating his family to Florida; hacked into his personal email and Apple ID accounts (upon information and belief); inexplicably exercised dominion and control over his personal property, which, as of the date of this first amended counterclaim, has not been returned; and took adverse employment action against him for submitting whistleblower complaints about IT security concerns and financial malfeasance. To make matters worse, when

Polequaptewa attempted to retrieve his personal property after he was forced to resign, Mooers, in the presence of numerous other Blue Stone representatives and affiliates (including Yacobi, who, without Polequaptewa's permission, took a video of the incident on his phone) threatened and violently grabbed Polequaptewa.

## II. THE PARTIES

2. Polequaptewa is an individual residing in Garden Grove, California.

3. Blue Stone is a Delaware limited liability company with a principal place of business in Irvine, California.

4. Yacobi is an individual who, upon information and belief, resides in Orange County, California.

5. Mooers is an individual and the CEO of Blue Stone who, upon information and belief, resides in Orange County, California.

## III. JURISDICTION AND VENUE

6. This Court has personal jurisdiction over counter-defendant Blue Stone because Blue Stone has a principal place of business within Orange County, California, which is located within this Court's jurisdiction. Moreover, Blue Stone has consented to this Court's jurisdiction by commencing its action against Polequaptewa in this Court. This Court has personal jurisdiction over counter-defendant Mooers because, upon information and belief, Mooers resides in Orange County, California, which is located within this Court's jurisdiction.

7. Venue is proper because a majority of the events, omissions, and damages giving rise to Polequaptewa's counterclaims occurred in this district. In any event, Blue Stone chose this Court in its action against Polequaptewa, and thus cannot object to Polequaptewa's counterclaims on venue grounds.

8. This Court has subject matter jurisdiction over Polequaptewa's counterclaims because they fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). Polequaptewa's counterclaims are compulsory because,

among other reasons, they bear a logical relationship to Blue Stone's claims against Polequaptewa; both arise out of the employment relationship.

## IV. BACKGROUND ALLEGATIONS

### A. April 2014: The Employment Agreement

9. In April 2014, Polequaptewa and Blue Stone entered into a written employment agreement (the "Employment Agreement"), where Blue Stone hired Polequaptewa as a full-time employee, specifically a "senior strategist."

10. Although the Employment Agreement said that Blue Stone would provide Polequaptewa with a laptop computer, Blue Stone never did; Polequaptewa used his personal laptop computer throughout his tenure with Blue Stone.

11. The Employment Agreement (paragraph 19) provides that: "This Employment Agreement may be modified or amended, if the amendment is made in writing and is signed by both parties."

12. The Employment Agreement does not, expressly or impliedly, require Polequaptewa to relocate or engage in extended travel to complete his job duties as a senior strategist.

### B. October to November 2014: The disintegration of Polequaptewa's employment relationship with Blue Stone as a result of Blue Stone's subversive and retaliatory conduct

13. Polequaptewa's employment relationship with Blue Stone began to deteriorate in October and November 2014.

14. In October 2014, Blue Stone began to develop a project in Florida (the "Florida project"). Polequaptewa's supervisor, Bill Moon ("Moon"), listed Polequaptewa as a lead strategist on the Florida project.

15. Polequaptewa told Moon that he could not work on the Florida project for several significant reasons. For one, the Florida project required travel to Florida for six days a week for six months. Polequaptewa believed that he would

effectively have to move his wife, who works full time in Irvine, and three young children to Florida so that he could work on the Florida project. Polequaptewa attempted to accommodate Blue Stone by offering to work three to four days in Florida, but Moon told Polequaptewa that "this is the consulting world; we work all the time."

16. Polequaptewa nonetheless believed he would be off the Florida project after voicing his objections.

17. In November 2014, Polequaptewa submitted two internal whistleblower complaints in writing to Blue Stone corporate officers, including Mooers. The complaints related to IT security concerns and financial malfeasance by Blue Stone corporate officers. Specifically, Polequaptewa complained about how Blue Stone corporate officers improperly paid tribal leaders—Ernest Stevens, Jr. (Chairman of the National Indian Gaming Association), Brian Patterson (President of the United South & Eastern Tribes), Tim Keller (New Mexico State Senator), Brian Cladoosby (President of the National Congress of American Indians), Gale Courty Toensing (Editorial Staff at Indian Country Today), and Henry Cagey (Elected Tribal Counsel Member, Lummi Nation), among others—to convince their constituents to get contracts for Blue Stone.

18. In November 2014, after submitting his internal complaints, Polequaptewa was demoted from a senior strategist to a strategist.

19. On or around November 10, 2014, Polequaptewa saw his name on a travel logistics email for the Florida project.

20. Polequaptewa spoke with Moon once again after seeing the travel logistics email. Moon told Polequaptewa that he had to go for the first week just to get the project launched. Polequaptewa agreed to go for a week, but believed that he would be returning home to Orange County after helping to launch the Florida project.

21. Polequaptewa arrived in Florida on or around November 18, 2014.

When Polequaptewa arrived in Florida, he received an orientation-meeting outline. The outline listed Polequaptewa as one of the two Blue Stone employees who would be required to be in Florida from Sunday to Friday each week for six months.

22. Polequaptewa felt that Blue Stone deceived him, ignored his concerns, and retaliated against him. Polequaptewa attempted to discuss his concerns about the Florida project with Blue Stone's office manager, Moon, and Mooers.

23. Everyone at Blue Stone that Polequaptewa attempted to contact ignored him and avoided his request for resolution. Polequaptewa felt trapped into spending six days a week in Florida for six months. Consequently, Polequaptewa felt that he had no choice but to resign from Blue Stone.

### C. Evening of November 18, 2014: Moon falsely tells the police that Polequaptewa might kill himself in order to gain access to Polequaptewa's hotel room

24. On the evening of November 18, 2014, after Polequaptewa resigned from Blue Stone, upon information and belief, Moon had the hotel staff call the police and tell them that Polequaptewa might kill himself. Upon information and belief, Moon lied to the hotel staff and said that Polequaptewa had been fired from Blue Stone, which played a significant role in the hotel staff agreeing to call the police.

25. The police arrived at Polequaptewa's hotel room in response to the hotel staff's call. Polequaptewa's wife and young children were in the hotel room.

26. Moon arrived with the police and attempted to get the police officer to seize Polequaptewa's personal laptop. Moon alleged that the laptop belonged to Blue Stone. Polequaptewa asserted that the laptop belonged to him.

27. The police officer advised Polequaptewa to turn over the laptop to show that he had nothing to hide, but to take pictures of it and lock the device. Polequaptewa invoked his Fourth Amendment rights and asked to be left alone.

Nonetheless, the police officer clearly stated that Polequaptewa would be arrested if he did not comply. Polequaptewa did not want his daughters to see him get arrested. As a result, Polequaptewa cooperated with the police officer because he felt he had no other choice, and was not detained in any form.

**D. Polequaptewa's personal email accounts and Apple ID account are hacked into shortly after Polequaptewa provides Blue Stone access to his linked Blue Stone email account**

28. On or around November 14, 2014, Moon and Mooers requested that Polequaptewa transfer all company network and IT-related administrative passwords and privileges over to Mooers' longtime friend, Eldad Yacobi ("Yacobi"). Polequaptewa complied with the request, and did not give his passwords and privileges to anyone else.

29. The following Tuesday, November 18, 2014, Polequaptewa was locked out of his Blue Stone email account, which was the recovery account for two of his personal email accounts. Polequaptewa has not given his passwords to his two personal email accounts to anyone else, but they can be accessed via his Blue Stone email account.

30. Within an hour, Polequaptewa discovered that his personal email accounts were hacked through his Blue Stone email account. His two personal email accounts were then used to hack his Apple ID account, which Polequaptewa was locked out of as well. Polequaptewa has not given his password to his Apple ID account to anyone else, but it can be accessed via his personal email accounts.

31. Once Polequaptewa regained access to his personal email accounts and Apple ID account, he began receiving consistent phone text and voice message attempts to hack back into his accounts. The cyber attacks attempting to gain access to Polequaptewa's email accounts even extended to his bank account.

32. Polequaptewa traced the IP address of the intruder to Southern California, and was in Florida at the time of the cyber attacks. Moreover,

Polequaptewa's Apple ID phone number was changed from his cell phone number to the Blue Stone main office number. Therefore, upon information and belief, Blue Stone caused and/or contributed to the cyber attacks.

**E. November 19, 2014 to the present: Blue Stone does not allow Polequaptewa to retrieve his personal property, and Mooers threatens and violently grabs Polequaptewa when he returns to Blue Stone to retrieve his personal property**

33. On or around November 19, 2014, Polequaptewa decided to go to Blue Stone's Irvine office to obtain his personal property. Polequaptewa entered his former office to begin retrieving his personal property. Polequaptewa's former office is small and visible to the hallway by way of a glass window.

34. As Polequaptewa was retrieving his personal property, Mooers entered and began yelling at Polequaptewa. Polequaptewa calmly told Mooers that he was here to retrieve his personal property. Mooers screamed at Polequaptewa and said that he was going to call the police. Polequaptewa responded that he already spoke to the Irvine police department before he came, and they said that there was no problem with him coming to Blue Stone to retrieve his personal property. Mooers began getting in Polequaptewa's face, raising his arms in a threatening manner, and blocking Polequaptewa's exit from the office.

35. Because of Mooers' screaming, other Blue Stone employees, affiliates, and even neighboring office tenants began to congregate on the scene. The owner of Blue Stone even witnessed the scene.

36. Yacobi began recording Polequaptewa with his camera phone from behind the glass to Polequaptewa's office. Polequaptewa did not consent to the recording. Polequaptewa was aware that he was being recorded and felt threatened, cornered, and trapped, though he remained calm on the outside.

37. Meanwhile, Mooers continued to threaten Polequaptewa. When Polequaptewa maintained his position that he was just there to retrieve his personal

property, Mooers violently grabbed Polequaptewa's arm without Polequaptewa's consent. Polequaptewa was injured and highly offended by Mooers' physical contact with him.

38. Seeing no other option, Polequaptewa told Mooers and the onlookers that he would come back to retrieve his personal property another time.

39. On or around November 21, 2014, Polequaptewa made a written request for his personal property to Mooers, among others. Polequaptewa also included his proof of purchase of his personal laptop with the serial number identification.

40. On or around November 24, 2014, Polequaptewa received an email from Matthew Berliner, an attorney, on behalf of Blue Stone. Mr. Berliner advised that Blue Stone would pack up Polequaptewa's personal property and ship it to his home address in Garden Grove, but that they would be turning over Polequaptewa's laptop to the authorities. Polequaptewa was surprised that Blue Stone (and not the Florida police) was in possession of his personal laptop.

41. Polequaptewa did not receive all of his personal property. Polequaptewa made another request for his remaining personal property on or around February 2, 2015 once he retained counsel, but, as of the date of this amended counterclaim, has not received his remaining personal property. It is still in Blue Stone's possession, custody, and control.

42. Polequaptewa's personal property that wrongfully remains in Blue Stone's possession, custody, and control includes, but is not limited to:

- 2 Customized Professional-Grade Computers;
- 2 High-Capacity Storage Devices;
- 10 Specialized Cables, Adapters and Surge Protectors;
- 1 Industry-Standard Video Editing Software;
- 4 High-Resolution Licensed Design Packages;
- 1 Microsoft Office Suite;

- 1 Developer Licensed Toolkit;
- 1 Professional Photo Editing Software;
- 1 Pendleton Blanket Wall Display Kit.

43. On March 18, 2015, Polequaptewa received a right to sue letter against Blue Stone and Mooers from the California Department of Fair Employment and Housing (DFEH Matter Number: 510526-151168).

44. Polequaptewa was issued an immediate right to sue notice; DFEH closed his complaint and took no further action.

45. On April 19, 2015, Polequaptewa's undersigned counsel served the right to sue letter on counsel for Blue Stone and recommended that counsel for Blue Stone bring the right to sue letter to Mooers' attention as well.

**<u>FIRST COUNTERCLAIM</u>**

**(For breach of contract, against Blue Stone)**

46. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 45.

47. Polequaptewa and Blue Stone entered into a valid contract by executing the Employment Agreement in or around April 2014.

48. Polequaptewa performed all of the significant duties that the Employment Agreement required of him, or was excused from doing so.

49. Blue Stone pressured and deceived Polequaptewa into abruptly relocating to Florida six days a week for six months, but such a relocation was not an express or implied term of the Employment Agreement. Blue Stone failed to amend the Employment Agreement in writing, pursuant to paragraph 19, in order to allow for the term of Polequaptewa's relocation to Florida.

50. Polequaptewa was damaged by Blue Stone's breach of the Employment Agreement in that, among other things, he had no choice but to resign his position at Blue Stone, and Blue Stone continues to improperly retain his personal property.

## SECOND COUNTERCLAIM

**(For breach of the covenant of good faith and fair dealing, against Blue Stone)**

51. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 50.

52. Polequaptewa and Blue Stone entered into a valid contract by executing the Employment Agreement in or around April 2014.

53. Polequaptewa performed all of the significant duties that the Employment Agreement required of him, or was excused from doing so.

54. Blue Stone unfairly interfered with Polequaptewa's right to receive the benefits of the Employment Agreement by pressuring and deceiving Polequaptewa into abruptly relocating to Florida six days a week for six months, when such a relocation was not an express or implied term of the Employment Agreement.

55. Polequaptewa was damaged by Blue Stone's breach of the covenant of good faith and fair dealing in that, among other things, he had no choice but to resign his position at Blue Stone, and Blue Stone continues to improperly retain his personal property.

## THIRD COUNTERCLAIM

**(For invasion of privacy, against Blue Stone and Yacobi)**

56. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 55.

57. Polequaptewa had a reasonable expectation of privacy in being undisturbed in his hotel room in Florida with his wife and children on the evening of November 18, 2014.

58. Blue Stone intentionally intruded in Polequaptewa's hotel room when Moon misrepresented to the hotel staff and police that Polequaptewa might try to kill himself.

59. Blue Stone's intrusion is highly offensive to a reasonable person

because of the nature of the misrepresentation, and how it was done in front of Polequaptewa's wife and young children. Moreover, the motivation for the call was specious—Blue Stone knew that it never provided Polequaptewa with a laptop, and that Polequaptewa used his personal laptop. But Moon attempted to have the police seize Polequaptewa's personal laptop anyway.

60. Blue Stone's conduct was a substantial factor in causing Polequaptewa's harm. As a result of Blue Stone's intrusion into Polequaptewa's private affairs, Polequaptewa's right to privacy was damaged.

61. Polequaptewa had a reasonable expectation of privacy in his personal email accounts and Apple ID account.

62. Blue Stone intentionally intruded in Polequaptewa's personal email accounts and Apple ID account by locking Polequaptewa out of his Blue Stone email account, and then, upon information and belief, hacking into his personal email accounts and Apple ID account.

63. Blue Stone's intrusion into Polequaptewa's personal email accounts and Apple ID account was highly offensive to a reasonable person because no one would want their sensitive information compromised. Further, the circumstances under which the intrusion occurred—on the same day that Polequaptewa resigned from Blue Stone, after Polequaptewa's relationship with Blue Stone deteriorated (e.g., by submitting internal complaints), and with the future event of Blue Stone wrongfully repossessing Polequaptewa's personal property—make the intrusion highly offensive to a reasonable person.

64. Blue Stone's conduct was a substantial factor in causing Polequaptewa's harm. As a result of Blue Stone's additional intrusion into Polequaptewa's private affairs, Polequaptewa's right to privacy was damaged.

65. Polequaptewa had a reasonable expectation of privacy in retrieving his personal belongings without being recorded on a camera phone.

66. Yacobi intentionally intruded in Polequaptewa's attempt to retrieve

his personal belongings from Blue Stone—Yacobi recorded with his camera phone, without Polequaptewa's consent, the scene of Polequaptewa attempting to retrieve his personal belongings from Blue Stone.

67. Yacobi's intrusion would be highly offensive to a reasonable person because of the setting in which the intrusion occurred, and Yacobi's alleged motives. Yacobi heard Mooers screaming and threatening Polequaptewa, and was fully aware of the circumstances surrounding Polequaptewa's resignation from Blue Stone. Yacobi, upon information and belief, was motivated to capture Polequaptewa in an unflattering light, which could allow Blue Stone to use the video evidence out of context.

68. Yacobi's conduct was a substantial factor in causing Polequaptewa's harm. As a result of Yacobi's intrusion into Polequaptewa's private affairs, Polequaptewa's right to privacy was damaged.

69. In committing the above acts, Blue Stone and Yacobi acted with oppression, fraud, and/or malice. Blue Stone and Yacobi acted with intent to cause injury, and acted with a willful and knowing disregard of the rights and safety of Polequaptewa. Blue Stone and Yacobi's conduct was despicable, and subjected Polequaptewa to cruel and unjust hardship in knowing disregard of his rights. Blue Stone and Yacobi intentionally misrepresented and/or concealed a material fact with the intent to harm Polequaptewa. Blue Stone's officers, directors, and managing agents authorized and/or ratified Moon and other employees' wrongful acts against Polequaptewa. As a result, Polequaptewa is entitled to an award of punitive damages.

**FOURTH COUNTERCLAIM**

**(For conversion, against Blue Stone)**

70. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 69.

71. Blue Stone continues to exercise wrongful dominion and control over

Polequaptewa's personal property described in paragraph 42, *supra*. Blue Stone is not only exercising wrongful dominion and control over the personal property itself, but also the intellectual property contained in the computer equipment and external hard drives, including: data, templates, models, proposals, and approximately $150,000.00 worth of contracts.

72. As a proximate result of Blue Stone's wrongful exercise of dominion and control over Polequaptewa's property, Polequaptewa has been damaged well in excess of the jurisdictional limit (in an amount to be proven at trial).

73. In committing the above acts, Blue Stone acted with oppression, fraud, and/or malice. Blue Stone acted with intent to cause injury, and acted with a willful and knowing disregard of the rights and safety of Polequaptewa. Blue Stone's conduct was despicable, and subjected Polequaptewa to cruel and unjust hardship in knowing disregard of his rights. Blue Stone intentionally misrepresented and/or concealed a material fact with the intent to harm Polequaptewa. Blue Stone's officers, directors, and managing agents authorized and/or ratified employees' wrongful acts against Polequaptewa. As a result, Polequaptewa is entitled to an award of punitive damages.

## FIFTH COUNTERCLAIM

**(For retaliation [Cal. Gov. Code § 12940(h)], against Blue Stone and Mooers)**

74. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 73.

75. Polequaptewa exhausted his administrative remedies before filing the present civil action.

76. Polequaptewa claims that Blue Stone and Mooers retaliated against him for submitting internal whistleblower complaints relating to IT security concerns and financial malfeasance by Blue Stone corporate officers.

77. After Polequaptewa submitted these internal whistleblower complaints, he was demoted. Further, he was placed on the Florida project despite

his legitimate concerns, which were ultimately ignored. Because Polequaptewa could not abruptly relocate his wife and three young children to Florida, Blue Stone effectively forced his hand, and he felt he had no choice but to resign.

78. Upon information and belief, Polequaptewa's internal whistleblower complaints were a motivating reason for Blue Stone and Mooers to demote him and effectively force him to resign.

79. Blue Stone and Mooers' retaliatory conduct was a substantial factor in causing harm to Polequaptewa. Polequaptewa was harmed by Blue Stone and Mooers' retaliatory conduct because, among other things, he was demoted and effectively forced to resign.

80. In committing the above acts, Blue Stone and Mooers acted with oppression, fraud, and/or malice. Blue Stone and Mooers acted with intent to cause injury, and acted with a willful and knowing disregard of the rights and safety of Polequaptewa. Blue Stone and Mooers' conduct was despicable, and subjected Polequaptewa to cruel and unjust hardship in knowing disregard of his rights. Blue Stone and Mooers intentionally misrepresented and/or concealed a material fact with the intent to harm Polequaptewa. Blue Stone's officers, directors, and managing agents authorized and/or ratified employees' wrongful acts against Polequaptewa. As a result, Polequaptewa is entitled to an award of punitive damages.

## SIXTH COUNTERCLAIM

### (For assault, against Mooers)

81. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 80.

82. When Polequaptewa returned to Blue Stone to attempt to retrieve his personal property, Mooers got in Polequaptewa's face, raised his arms in a threatening manner, and blocked Polequaptewa's exit from the office, intending to cause harmful or offensive contact to Polequaptewa.

83. Polequaptewa reasonably believed that Mooers was about to touch him in a harmful or offensive manner.

84. Polequaptewa did not consent to Mooers' conduct.

85. Mooers' conduct was a substantial factor in causing Polequaptewa's harm. Polequaptewa was harmed and offended by Mooers' threatening and highly offensive conduct.

86. In committing the above acts, Mooers acted with oppression, fraud, and/or malice. Mooers acted with intent to cause injury, and acted with a willful and knowing disregard of the rights and safety of Polequaptewa. Mooers' conduct was despicable, and subjected Polequaptewa to cruel and unjust hardship in knowing disregard of his rights. As a result, Polequaptewa is entitled to an award of punitive damages.

## SEVENTH COUNTERCLAIM

## (For battery, against Mooers)

87. Polequaptewa re-alleges and incorporates by reference each allegation in paragraphs 1 to 86.

88. When Polequaptewa returned to Blue Stone to attempt to retrieve his personal property, Mooers touched Polequaptewa with the intent to harm or offend him.

89. Polequaptewa did not consent to the touching.

90. Polequaptewa was harmed and offended by Mooers' conduct.

91. A reasonable person in Polequaptewa's position would also have been offended by Mooers' violent grab.

92. In committing the above acts, Mooers acted with oppression, fraud, and/or malice. Mooers acted with intent to cause injury, and acted with a willful and knowing disregard of the rights and safety of Polequaptewa. Mooers' conduct was despicable, and subjected Polequaptewa to cruel and unjust hardship in knowing disregard of his rights. As a result, Polequaptewa is entitled to an award

of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Polequaptewa prays for judgment as follows:

1. For general and special damages in an amount to be established at trial, and such penalties as are allowed by law;

2. For injunctive relief;

3. For return of the property described in paragraph 42, *supra*, and damages for its detention;

4. For punitive damages;

5. For Polequaptewa's costs of suit incurred in the defense of this action, including attorneys' fees with pre- and post-judgment interest; and

6. For such other relief as the Court deems proper.

Dated: April 23, 2015

Respectfully submitted,

KHOURI LAW FIRM

By: */s/ Andrew B. Goodman*
MICHAEL J. KHOURI, ESQ.
ANDREW B. GOODMAN, ESQ.
Attorneys for defendant/counterclaimant
NIKISHNA POLEQUAPTEWA

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Polequaptewa demands a trial by jury in the above-entitled matter.

Dated: April 23, 2015

Respectfully submitted,

KHOURI LAW FIRM

By: */s/ Andrew B. Goodman*
MICHAEL J. KHOURI, ESQ.
ANDREW B. GOODMAN, ESQ.
Attorneys for defendant/counterclaimant
NIKISHNA POLEQUAPTEWA